Susanne UEBLER, Plaintiff,

v.

BOSS MEDIA, AB a/k/a Boss Media Group, Cybercroupier Sweden AB a/k/a Cybercroupier Group, and Cybercroupier, Ltd. t/a Oriental Casino, Defendants.

No. 03 Civ. 4790(ADS)(MLO).

United States District Court, E.D. New York.

March 29, 2005.

Naiburg, Rosenblum & Weissman, by Eric W. Naiburg, Esq., Central Islip, NY, for the Plaintiff.

Wisler, Pearlstine, Talone, Craig, Garrity & Potash, LLP, Blue Bell, PA (Geoffrey

L. Beuchamp, Michael D. Kristofco, of Counsel), for the Plaintiff.

Piper Rudnick, LLP, New York, NY (Elizabeth A. Weill, of Counsel), for the Defendant Boss Media AB a/k/a Boss Media Group.

No Appearance for Defendant Cybercroupier Sweden AB a/k/a Cybercroupier Group and Defendant Cybercroupier, Ltd. t/a Oriental Casino.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case, premised on diversity jurisdiction, involves allegations by the Plaintiff Susanne Uebler ("Uebler" or the "Plaintiff") that Boss Media AB a/k/a Boss Media Group ("Boss Media"), CyberCroupier Sweden AB a/k/a CyberCroupier Group and CyberCroupier, Ltd. t/a Oriental Casino ("CyberCroupier"), (collectively, the "Defendants") failed to pay prize money to her in the amount of $913,333.42 owed to her from winning the "Win a Million" trivia contest from an online gambling website known as the "Oriental Casino."

Presently before the Court is a motion by the Boss Media to dismiss the claims against it in their entirety for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(2).

## I. BACKGROUND

In a case such as this where the parties have not yet engaged in discovery, for purposes of analyzing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the Court accepts the allegations in the amended complaint to be true. The Court may also consider the Plaintiff's "affidavits and supporting materials" in determining whether a prima facie showing of personal jurisdiction has been established. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981). A recitation of the facts follows.

### A. The Parties

The Plaintiff is an adult individual residing in Coram, New York.

Boss Media is a corporation or other legal entity organized under the laws of Sweden whose principal place of business is located in Växjö, Sweden. According to the Amended Complaint, Boss Media is one of the world's leading suppliers of systems for online gambling casinos and other digitally distributed gaming entertainment. In that regard, Boss Media owns and/or controls numerous gambling casino enterprises through a combination of direct investment and license agreements throughout the world, including the United States. According to the 2000 Annual Report which is affixed to the Plaintiff's opposition papers:

> Apart from the parent company, Boss Media AB, the Group consists of the wholly-owned and operating subsidiaries Boss Casinos Ltd. and Webdollar Ltd. (Antigua & Barbuda) and Boss Media Investment AB. The Group also includes the dormant subsidiaries Boss Media N.V. (Netherlands Antilles), Webdollar LLC (Nevada) and Boss Gibraltar Ltd. (Gibraltar).

> The Group's activities are divided into four divisions; Software, Service & Support, Gold Club Casino and Casino.com. The activities of the divisions are run in the operating companies Boss Media AB, Boss Casinos Ltd. and Webdollar Ltd.

The amended complaint alleges that Boss Media oversaw and controlled the online gaming activities of CyberCroupier, its licensee. CyberCroupier allegedly operated the "Oriental Casino," an online

gaming enterprise which conducts online gaming activities accessible to customers residing in the United States, including residents of the State of New York.

## B. Factual Background

The Amended Complaint alleges that at all times relevant to this action, the Defendants owned and/or operated Oriental Casino, an online casino. In or about June 2000, Uebler logged on to the Oriental Casino and subscribed to their service. To subscribe, Uebler provided the Defendants with her name, age, address and other requested personal information.

In or about July 2000, the Defendants sponsored a "Fortune Cookie" promotion on the Oriental Casino website. As to this website, persons who logged on to the site were invited to send a "Fortune Cookie" e-mail to others who might be interested in the Oriental Casino. These e-mails promoted Oriental Casino and also provided to the Oriental Casino the e-mail addresses of other potential customers. Individuals who sent "Fortune Cookie" e-mails were eligible to be chosen as contestants in the "Win a Million" promotional trivia contest (the "Contest"). Thus, the winner of the Contest would receive a total prize of $1 million in cash payable in equal monthly installments over a period of twenty-five years. Sending "Fortune Cookie" e-mails was the only condition of eligibility in order to win the Contest. The Plaintiff alleges that the Contest was sponsored by the Defendants as part of a marketing strategy to promote the Oriental Casino and their other online gaming internet enterprises.

Uebler participated in the Contest by sending "Fortune Cookie" e-mails to several of her friends and acquaintances. On or about January 16, 2001, a representative of the Defendants called Uebler. This individual, whose name and affiliation is not identified in the Amended Complaint, told the Plaintiff that she was one of five persons who had been randomly chosen to compete for the $1 million prize. She was further told that she would receive a call from the Casino Gazette online radio station and would be asked a trivia question. She was advised that if she correctly answered the question she would win the $1 million, payable in equal monthly installments of $3333.33 over a period of twenty five years. At the Defendants' request, Uebler provided the Defendants with, among other information, detailed personal information about herself, including the fact that she is a resident of Long Island, New York.

On or about January 19, 2001, Uebler was called by Mike Craig of the Casino Gazette online radio station. She correctly answered the trivia question and was told that she won the $1 million prize. The Defendants confirmed her winning the contest by e-mail. The source of this e-mail is not identified in the amended complaint, but attachment's to the Plaintiff's opposition papers indicates that the Plaintiff's primary contact with respect to this contest was an individual named Morten Skelborg from Cybercroupier. The Defendants also told the Plaintiff that the prize money would be held in an escrow account from which the monthly payments would be disbursed.

From January 19, 2001, the day the Plaintiff won the Contest, through April 2003, the Defendants posted the Plaintiff's photo on the Oriental Casino website The accompanying profile identified the Plaintiff as a resident of Long Island, New York. This website also included statements attributed to her in an effort to promote the Oriental Casino website.

On or about April 29, 2003, Uebler received an e-mail message from Gerry Conaghan from CyberCroupier, indicating that

she would soon receive a call from the Defendants' attorney.

On April 30, 2003, Uebler was called by Cory Aronovitz, Esq. who allegedly identified himself as counsel for Oriental Casino and CyberCroupier. Aronovitz further stated that CyberCroupier was the operator of the Oriental Casino web site. During that conversation, Aronovitz told the Plaintiff that the Defendants are closing the Plaintiff's account with the Oriental Casino and that she would no longer receive any additional payments toward her $1 million prize.

On or about May 6, 2003, Aronovitz sent a letter to the Plaintiff confirming the cancellation of her prize money. According to the Amended Complaint, the Plaintiff is owed $913,333.42 in unpaid prize money. The Plaintiff alleges that Aronovitz acted as the authorized agent and representative of all of the Defendants, including Boss Media.

The Amended Complaint asserts the following causes of action against all of the Defendants: (1) Breach of Contract; (2) Promissory Estoppel/Detrimental Reliance; (3) Unjust Enrichment; (4) Violation of the New York Consumer Protection Act; (5) Constructive Trust. Against Boss Media, the Plaintiff alleges a cause of action for tortious interference with contractual relation. With respect to this cause of action the Plaintiff alleges that Boss Media interfered with her contractual relations with CyberCroupier. The Plaintiff further alleges that Boss Media knew of the Plaintiff's status as the winner of the Contest and "caused or induced CyberCroupier to unlawfully and improperly repudiate performance of its obligations to Plaintiff."

## II. DISCUSSION

### A. Legal Standard

■■■ For purposes of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving the court has personal jurisdiction over the defendants. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999). The precise burden borne by the plaintiff depends on the procedural posture of the case. Where, as here, the parties have not yet conducted discovery, the plaintiff may defeat such a motion by "pleading in good faith ... legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir.1998) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990)). No evidentiary hearing or factual determination is required for this purpose. *Credit Lyonnais Sec. (U.S.A.), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir. 1999). A plaintiff can meet this burden through his "own affidavits and supporting materials." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981).

These materials should contain, "an averment of the facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken–Overpelt*, S.A. 902 F.2d 194, 197 (2d Cir.1990). The court will view these facts in the light most favorable to the plaintiff. *See PDK Labs v. Friedlander*, 103 F.3d 1105, 1108; *A.I Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993). When considering various affidavits and sworn declarations, the Court must construe them in the "light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a contravening presentation to the moving party." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80.

In the Amended Complaint the Plaintiff asserts that "the Defendants are subject to

personal jurisdiction ... given that a substantial part of the events, representations or omissions giving rise to this claim occurred or were directed to persons within this judicial district." In their opposition to the motion to dismiss, the Plaintiff sets forth three bases for personal jurisdiction over Boss Media: (1) Boss Media conducted substantial activities in the State of New York though its affiliates and subsidiaries; (2) Boss Media controlled the operations of the Oriental Casino Website in a joint venture/partnership with CyberCroupier; and (3) Boss Media tortiously interfered with the contractual relationship between the Plaintiff and the CyberCroupier defendants.

### B. Applicable Law

■ To determine whether a federal court has personal jurisdiction over a defendant, the Court must first determine whether the plaintiff has demonstrated that the Defendant is subject to personal jurisdiction under the forum state's laws. *Bensusan Rest. Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997). If there is jurisdiction under New York law, then the Court must evaluate whether the exercise of that jurisdiction comports with the requirements of due process. *Id.; See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999).

In her Memorandum in Opposition to the Motion to Dismiss, the Plaintiff argues that there is long-arm jurisdiction over Boss Media pursuant to Sections 302(a)(1) and 302(a)(3) of the New York Civil Practice Law and Rules ("CPLR").

### 1. As to Section 302(a)(1)

■■ Section 302(a)(1) allows a court to exercise personal jurisdiction over any nondomiciliary who in person or through an agent (i) transacts business within the state; and (ii) the claim arises out of that activity. *See Bank Brussels,* 171 F.3d at 787 (2d Cir.1999); *see also Creative Socio-Medics, Corp. v. City of Richmond,* 219 F.Supp.2d 300, 306 (E.D.N.Y.2002). "Transacting business requires only a minimal quantity of activity, provided that it is of the right nature and quality and, in making a determination, a court must analyze the totality of the defendant's contact with the forum." *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996) (internal quotations and citations omitted). No one factor is dispositive as the determination must be made on the totality of the circumstances. *Id.* In addition, it is well-settled that in order for the Court to obtain jurisdiction under the "transaction of business" prong of Section 302(a)(1), the party need not be physically present in the state at the time of the service, and "a single transaction would be sufficient to fulfill this requirement." *Bank Brussels,* 171 F.3d at 787 (internal quotation marks and citation omitted).

### a. As to Boss Media's Subsidiaries, Boss Casinos and Webdollar

Here, the Amended Complaint alleges Boss Media does business in New York through its subsidiaries, Boss Casinos and Webdollar. It is undisputed that Boss Casinos and Webdollar are subsidiaries of the defendant Boss Media. In that regard, according to Boss Media's 2002 Annual Report:

> [Boss Media's] operations are carried out in the Boss Systems, Boss Operations and Best Games divisions ... Boss Operations carries out operations and maintenance, support activities as well as payment management on behalf of the licensees ... The divisions activities are carried out in Boss Media AB, *Boss Casinos N.V.* and *Webdollar AB.* The Best Games division carries out [Boss

Media's] gaming operations. The division's activities are carried out in Boss Media AB and *Boss Casino's N.V.*

(2002 Annual Report at 23) (emphasis added). With regard to the Boss Casinos subsidiary, despite Boss Media's argument to the contrary, the Court finds that, for purposes of this motion, Oriental Casino is controlled and operated by Boss Casinos. Supporting this finding is the following language on the Oriental Casino website:

1. Oriental Casino was regulated by government decree (license No. 4774/JAZ) issued by the Deputy Governor of the Netherlands Antilles to Boss Casinos N.V.;

2. Oriental Casino is operated by CyberCroupier through Boss Casinos N.V. in Curacao, Netherlands Antilles; and

3. Oriental Casino is developed and licensed by Boss Media AB.

Furthermore, the registrant of the website "orientalcasino.com" is Boss Casinos NV co BossMedia AB.

With regard to the Webdollar, the subsidiary that issued the checks to the Plaintiff and set up her online money transfers, the Court also notes that the "Oriental Casino" website contains the following "guarantee:"

**Our promise to you** …

As a player in Oriental Casino, you can expect to be treated fairly and on a personal level at all times. We'll do everything we can to give you as many guarantees as possible with fair games, secure transactions, 24 hours a day support, prompt payments and absolute privacy …

**Making a deposit**

When you're ready to make your first deposit, we accept most major credit cards along with payments using PayPal. *For extra peace of mind all your online transactions with us are guaranteed through the Webdollar system.*

(emphasis added). The Oriental Casino website also contains a link to the Webdollar website. In addition, in an effort to secure the payment of her $1 million prize, the Plaintiff exchanged several communications with Webdollar employees to set up the money transfer.

■ With respect to establishing personal jurisdiction over a party on the basis of its website and/or its use of the internet, the Court notes that "[a] firm does not do business in New York simply because New York citizens can contact the firm via the worldwide web ." *Smith v. Circus–Circus Casinos, Inc.,* 304 F.Supp.2d 463, 465 (S.D.N.Y.2003) (internal quotations and citations omitted); *see also K.C.P.L., Inc. v. Nash,* No. 98 Civ. 3773, 1998 WL 823657, *6, 1998 U.S. Dist. LEXIS 18464, at *20 (S.D.N.Y. Nov. 23, 1998) (citation omitted). However, where as here, a site is "highly interactive" personal jurisdiction will be found. *See Blissworld, LLC v. Kovack,* No. 125431/00, 2001 WL 940210 (N.Y.Sup. Ct. Jul.9, 2001) (web site through which Internet users could order plaintiff's products, and N.Y. sales revenues of $2,970 sufficient to support jurisdiction); *Zippo Manuf. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1125–26 (W.D.Pa.1997); *Stomp, Inc. v. NeatO, LLC,* 61 F.Supp.2d 1074, 1078 (C.D.Cal.1999) (noting that cases regarding personal jurisdiction stemming from internet activities create "outline of a rule where personal jurisdiction is not appropriate when a website is merely passive, either as an advertisement or for informational purposes, but is appropriate when an entity is conducting business over the Internet."); *Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.,* 105 F.Supp.2d 1142, 1150–51 (D.Or.2000) (personal jurisdiction established over website operate who actively sought resumes through website, ad-

vertising, and toll-free telephone number, and had received one resume from an in-state resident).

■ The Court finds that personal jurisdiction would have been established over Boss Casinos and Webdollar had they been named as defendants given the fact that the Oriental Casino is a highly interactive website because its primary function is to allow the customer to gamble over the internet. However, because these subsidiaries were not named as defendants in this case, the Court must determine whether Boss Media, as the parent company, is subject to personal jurisdiction because of the conduct and activities of its subsidiaries.

■ When the activities of a parent corporation show a disregard for the separate corporate existence of the subsidiary, New York law allows jurisdiction to be asserted over the subsidiary. *See Public Administrator v. Royal Bank,* 19 N.Y.2d 127, 278 N.Y.S.2d 378, 224 N.E.2d 877 (1967). To establish jurisdiction over a parent company for the acts of its subsidiary, it is essential that, as here, there is common ownership between the corporations. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984). Other factors that the court looks at include: (1) the financial dependency of the subsidiary on the parent corporation; (2) the degree to which the parent corporation interferes in the subsidiary's affairs; (3) the failure to observe corporate formalities; and (4) the degree of control over the marketing and operational policies of the subsidiary exercised by the parent. *Id.* The Court notes that application of these factors for jurisdiction requires a less onerous standard than that necessary to pierce the corporate veil for liability purposes. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981).

Based on the documents before the Court, the precise nature of the relationship between Boss Media and its subsidiaries, Boss Casinos and Webdollar, is unclear. However, "[a]lthough [the plaintiff has] not made a prima facie showing, [she] has made a sufficient start toward establishing personal jurisdiction." *Stratagem Dev. Corp. v. Heron Int'l N.V.,* 153 F.R.D. 535, 547–48 (S.D.N.Y.1994). In this situation, the Court is permitted to allow discovery. *See Winston & Strawn v. Dong Won Securities Co.,* No. 02–0183, 2002 WL 31444625, at *5 (S.D.N.Y. Nov.12, 2002); *Edelman v. Taittinger, S.A.,* 298 A.D.2d 301, 302, 751 N.Y.S.2d 171 (1st Dep't 2002) (citations omitted) ("While a showing of agency for jurisdictional purposes will not be inferred from the mere existence of a parent-subsidiary relationship ..., at this juncture, [the Plaintiff] should be allowed to learn whether the complex corporate relationships involved the parents' exercise of control over [its] subsidiar[y]."). To permit discovery in this case is bolstered by the fact that the facts necessary to establish personal jurisdiction lie within Boss Media's exclusive knowledge. *See Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n. 4 (9th Cir.1977).

**b. As to Boss Media's Licensee, CyberCroupier**

The Plaintiff also contends that the Court has personal jurisdiction over Boss Media through it affiliation with CyberCroupier and alleges that Boss Media "contracted with CyberCroupier to provide services within the State of New York ... under their licensing agreement." Mem. in Opp. at 13–14. It is undisputed that CyberCroupier is a licensee of Boss Media with respect to the Oriental Casino, an entity, over which the Court has personal jurisdiction.

However, because the exact nature of the relationship between Boss Media and CyberCroupier is not clear, the Court is unable to determine whether Boss Media is subject to personal jurisdiction on the basis of CyberCroupier's activities. The Court notes that Boss Media's 2001 Annual Report states, "licensees pay a fixed monthly charge for casino operation, maintenance and support, and variable monthly charge for gaming administration. The latter comprises a fixed percentage of processed payments from gaming." 2001 Annual Report at 19. In fact, according to the 2002 Annual Report, "The ten largest [licensees] ... answer for about 80 percent of royalty income." 2002 Annual Report at 49. Finally, according to the affidavit of Plaintiff's co-counsel, Geoffrey L. Beauchamp:

On or about October 5, 2003, I had a conversation with Cory Aronovitz, Esq. who informed me that he also represented Boss Media AB as well as CyberCroupier, Ltd. And CyberCroupier Group AB. During that conversation Mr. Aronovitz informed me that Boss Media had decided to "shut down CyberCroupier", but would not explain why.

Although the Plaintiff has not established a prima facie showing of personal jurisdiction over Boss Media based on its relationship with its licensee, in the Court's view, the above mentioned information indicates that the Plaintiff has "made a sufficient start" toward establishing "personal jurisdiction," *Stratagem Dev. Corp.*, 153 F.R.D. at 547–48. Thus, the Court will allow jurisdictional discovery with respect to nature of the relationship between Boss Media and CyberCroupier.

Because, at this juncture, the Court has not found that Boss Media "transacts business within the state," the Court need not address the second prong of the establishment of personal jurisdiction, namely, whether the exercise of jurisdiction over Boss Media comparts with the requirements of due process.

**2. As to Section 302(a)(3)**

The Plaintiff also asserts that the Court has personal jurisdiction over Boss Media pursuant to section 302(a)(3). This section permits a court to exercise personal jurisdiction over a non-domiciliary if it

Commits a tortuous act without the state causing injury to person or property within the state ... If he

(i) regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonable expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce....

NY CPLR § 302(a)(3). To determine whether an injury in New York warrants the exercise of jurisdiction under this section, courts "generally apply a situs-of-injury test, which asks them to locate the 'original event' which caused the injury," and " 'not the location where the resultant damages are felt by the plaintiff.' " *Whitaker v. Amer. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir.2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez*, 171 F.3d 779, 791 (2d Cir.1999); *see also Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir.1990)) ("the place of injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff" (citation omitted)).

Here the Plaintiff claims that personal jurisdiction over Boss Media is established because:

there is no question here that the tortious act committed by Boss Media outside New York consisted of the termination of the plaintiff's prize payments and then closing down the operations of the CyberCroupier defendants after the plaintiff objected to the termination of those benefits by filing suit against them ... The 'original event' ... was Ms. Uebler's experience of having her prize payments terminated, which clearly occurred in New York.

Plfs. Mem. in Opp. at 11.

The Court disagrees with this contention. By the Plaintiff's own admission, all of Boss Media's alleged conduct occurred outside of New York. The mere fact that Uebler's experience of having the payments terminated occurred in New York is not sufficient to establish personal jurisdiction pursuant to section 302(a)(3). *Whitaker*, 261 F.3d at 201 ("The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.") (quoting *United Bank of Kuwait v. James M. Bridges, Ltd.*, 766 F.Supp. 113, 116 (S.D.N.Y.1991)).

Accordingly, based on the allegations and documents before the Court at this time, the Plaintiff is unable to establish personal jurisdiction over Boss Media pursuant to Section 302(a)(3).

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that Boss Media's motion to dismiss for lack of personal jurisdiction is denied with leave to renew after the completion of limited discovery; and it is further

**ORDERED**, that the parties are directed to report to United States Magistrate Judge Michael L. Orenstein forthwith for the purpose of conducting limited discovery with respect to the issue of personal jurisdiction.

**SO ORDERED.**