Susanne UEBLER, Plaintiff,

v.

BOSS MEDIA AB a/k/a Boss Media Group, Cybercroupier Sweden AB a/k/a Cybercroupier Group, Cybercroupier, Ltd. t/a Oriental Casino, Defendants.

No. 03 CV 4790(ADS)(MLO).

United States District Court, E.D. New York.

May 30, 2006.

Naiburg, Rosenblum & Weissman by
Eric W. Naiburg, Esq., of Counsel, Central
Islip, NY, Wisler, Pearlstine, Talone,
Craig, Garrity & Potash, LLP by Geoffrey
I. Beauchamp, Esq., Michael D. Kristofco,
Esq., Blue Bell, PA, for the Plaintiff.

Piper Rudnick LLP by Keith E. Smith,
Esq., Elizabeth A. Weill, Esq., New York
City, for the Defendant Boss Media AB.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves allegations by Susanne Uebler ("Uebler" or the "plaintiff") that Boss Media AB a/k/a Boss Media Group ("Boss Media"), CyberCroupier Sweden AB a/k/a CyberCroupier Group and CyberCroupier, Ltd. t/a Oriental Casino ("CyberCroupier") (collectively, the "defendants"), failed to pay prize money to her in the amount of $913,333.42 owed to her from winning the "Win a Million" trivia contest on an online gambling website known as the "Oriental Casino."

On or about August 26, 2004, Boss Media made a motion to dismiss the amended complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(2). On March 29, 2005, the Court denied Boss Media's motion to dismiss, without prejudice, and with leave to renew after the completion of limited jurisdictional discovery. *Uebler v. Boss Media, AB,* 363 F.Supp.2d 499 (E.D.N.Y.2005). Presently before the Court is Boss Media's second motion to dismiss the plaintiff's claims against it for lack of personal jurisdiction.

## I. BACKGROUND

### A. Relevant Facts

The identity of the parties and the factual allegations are more fully discussed in the Court's March 29, 2005 Memorandum and Decision and Order, familiarity of which is presumed. *Uebler,* 363 F.Supp.2d at 501–03. The following facts are those relevant for the purpose of this motion.

The plaintiff is an adult individual residing in Coram, New York. Boss Media is a Swedish corporation with its principal place of business located in Växjö, Sweden.

In or about July 2000, the plaintiff won a $1 million prize by participating in a web-based promotional trivia contest sponsored and operated by subsidiaries and a licensee of Boss Media.

The relevant subsidiaries are "Boss Casinos," the firm that provides services to the operator of the Oriental Casino website; and "WebDollar," the entity that manages financial matters related to online gaming at the Oriental Casino website. WebDollar's activities include accepting payments, issuing checks, and arranging online money transfers. The amended complaint also alleges that Boss Media oversaw and controlled the online gaming activities of CyberCroupier, its licensee. CyberCroupier allegedly operated the Oriental Casino website. According to Boss Media's 2000 Annual Report, previously submitted to the Court:

> Apart from the parent company, Boss Media AB, the Group consists of the wholly-owned and operating subsidiaries Boss Casinos Ltd. and Webdollar Ltd. (Antigua & Barbuda) and Boss Media Investment AB. The Group also includes the dormant subsidiaries Boss Media N.V. (Netherlands Antilles), Webdollar LLC (Nevada) and Boss Gibraltar Ltd. (Gibraltar).
>
> The Group's activities are divided into four divisions; Software, Servic & Support, Gold Club Casino and Casino.com. The activities of the divisions are run in the operating companies Boss Media AB, Boss Casinos Ltd. and Webdollar Ltd.

The plaintiff contends that winning the contest entitled her to receive from the defendants monthly payments of $3333.33, commencing in or about March 2001, for a period of twenty-five years. The plaintiff received the payments due to her through April 2003. In or about the end of April 2003, the plaintiff received notice from a representative of the Oriental Casino website that she would not be receiving any additional payments toward her $1 million prize and that her account with Oriental Casino was being closed. This lawsuit followed.

## B. This Court's Prior Order

After being served with the amended complaint, Boss Media made a motion to dismiss the plaintiff's claims against it for lack of personal jurisdiction. In her opposition to the motion to dismiss, the plaintiff set forth three bases for personal jurisdiction over Boss Media under New York State law pursuant to Sections 302(a)(1) and 302(a)(3) of New York's Civil Practice Law and Rules ("CPLR").

Section 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state." CPLR § 302(a)(1). Section 302(a)(3) provides that a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... commits a tortious act without the state causing injury to person or property within the state. CPLR § 302(a)(3).

First, the Court rejected the plaintiff's assertion of jurisdiction under the "tortious act" prong of CPLR 302(a), which was based solely on the fact that the plaintiff's experience of having her prize payments terminated, occurred in New York. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir.2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez*, 171 F.3d 779, 791 (2d Cir.1999)); *see also Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) ("[T]he place of injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff") (citation omitted). In this case,

all of Boss Media's alleged conduct occurred outside of New York, and the mere fact that the plaintiff's experience of having the payments terminate occurred in New York was insufficient to support personal jurisdiction pursuant to section 302(a)(3).

The question of jurisdiction over Boss Media under the "transacting business" standard presented a more difficult question. The amended complaint did not allege that Boss Media itself "transacted" business in New York. Instead, the plaintiff alleged that Boss Media should be deemed to be doing business in New York through the activities of its subsidiaries, Boss Casinos and WebDollar, and through its licensee CyberCroupier.

As a preliminary matter, the Court was satisfied that it would be appropriate to exercise jurisdiction over the subsidiaries and the licensee. Although CyberCroupier is named as a defendant in this lawsuit, they have not answered the amended complaint or otherwise appeared. Neither of the subsidiaries is named as a defendant. The Court determined that there was insufficient evidence regarding the relationships of the parties from which to impute the New York activities of the subsidiaries or the licensee to Boss Media, the parent company. Accordingly, the Court directed the parties to engage in limited discovery for the purpose of developing the record with respect to Boss Media's relationship with its subsidiaries Boss Casinos and WebDollar, and its licensee CyberCroupier.

During the limited discovery, Boss Media produced documentary evidence and presented one Martin Thorvaldsson for a telephonic deposition. Thorvaldsson is a Swedish citizen employed by Boss Media as its inside legal counsel. Having completed the jurisdictional discovery, Boss Media now renews its motion to dismiss for lack of subject matter jurisdiction.

## II. DISCUSSION

### A. Legal Standard

 For purposes of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving the court has personal jurisdiction over the defendants. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999). The precise burden borne by the plaintiff depends on the procedural posture of the case. Where, as here, the parties have conducted jurisdictional discovery but no hearing has been held, it remains the plaintiff's burden to produce prima facie evidence establishing jurisdiction. *Bank Brussels*, 171 F.3d at 784; *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996); *see also Cromer Fin. Ltd. v. Berger*, Nos. 00 CIV. 2284(DLC), 00 CIV. 2498(DLC), 2001 WL 506908, at *3 n. 2 (S.D.N.Y. May 14, 2001) ("[R]ecent Second Circuit cases ... consistently hold that the prima facie standard governs where discovery has occurred in the absence of a hearing.") (citations omitted).

 To determine whether a federal court has personal jurisdiction over a defendant, the Court must apply the law of the forum state. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997). The only asserted basis of jurisdiction under New York State law remaining is that Boss Media can be found to have been "transacting business" in New York by virtue of the activities of its subsidiaries Boss Casinos and WebDollar. The plaintiff's brief in opposition to Boss Media's motion to

dismiss does not assert the argument that jurisdiction over Boss Media is proper based on the activities of the licensee CyberCroupier. Thus, the Court considers this argument abandoned.

## B. Is Jurisdiction over Boss Media Appropriate Based on the Activities of the Subsidiaries Boss Casinos and WebDollar?

■ The Second Circuit has succinctly stated the analytical framework to be applied by a Court when determining whether to exercise jurisdiction over a foreign parent company based on the in-state activities of that company's subsidiaries. *See Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184 (2d Cir.1998). In such a case, the CPLR requires that the subsidiary be functioning as either an "agent" or a "mere department" of the parent. *Id.* at 184 (citing *Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863 865 (2d Cir.1996)).

### 1. As to Agency

■ "To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials.'" *Jazini,* 148 F.3d at 184 (quoting *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 227 N.E.2d 851, *remittitur amended,* 20 N.Y.2d 737, 283 N.Y.S.2d 99, 229 N.E.2d 696 (1967)). In practical terms, this test requires the Court to examine whether the subsidiaries' presence in the New York market is in lieu of the parent and, also, "whether the parent would have to enter the market directly if the subsidiar[ies were] absent because the market is too important to the parent's welfare." *See Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd.,* 508 F.Supp. 1322, 1342 (E.D.N.Y.1981); *see also In re Ski Train Fire,* 230 F.Supp.2d 376, 385 (S.D.N.Y.2002).

■ According to Boss Media's 2002 Annual Report, previously provided to the Court:

> [Boss Media's] operations are carried out in the Boss Systems, Boss operations and Best Games divisions ... Boss Operations carries out operations and maintenance, support activities as well as payment management on behalf of the licensees.... The divisions are carried out in Boss Media AB, Boss Casinos N.V. and Webdollar AB. The Best Games division carries out [Boss Media's] gaming operations. The division's activities are carried out in Boss Media AB and Boss Casinos N.V.

Specifically, Boss Media is in the business of developing and licensing software to be used by a licensee to operate online-casino games. Although neither of the subsidiaries, Boss Casinos or WebDollar, is engaged in those particular activities, the Court finds that the New York activities of WebDollar are sufficient to establish personal jurisdiction over Boss Media.

WebDollar processes online-financial transactions related to web-based gambling activities of the members of websites that utilize Boss Media's software. The money collected through the online gambling activities is received by WebDollar and distributed among Boss Media, Boss Casinos and CyberCroupier, with WebDollar retaining a service fee. *See Thorvaldsson Deposition at 64–64.* These facts establish that WebDollar functioned as a integral part of Boss Media's software development and licensing operation. Under these circumstances, the plaintiff has satisfied her burden by establishing the appearance of WebDollar as a division of Boss Media's financial department, responsible for processing certain transactions and allocating the proceeds. This conclusion is supported by Boss Media's own description in its Annual Report of Webdollar as "carrying out" activities of certain divisions of Boss Media. Absent the exis-

tence of WebDollar to perform these functions, in the Court's view, with reasonable certainty Boss Media would conduct these activities itself. Accordingly, the defendant's motion to dismiss the amended complaint for lack of personal jurisdiction is denied. Having determined jurisdiction over Boss Media is proper because Web-Dollar was acting as its agent, the Court finds it unnecessary to discuss whether WebDollar or Boss Casinos qualify as a "mere department" of Boss Media.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that Boss Media's motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(2) is **DENIED**; and it is further

**ORDERED**, the parties are directed to contact United States Chief Magistrate Judge Michael L. Orenstein for the purpose of conducting discovery.

**SO ORDERED.**