*213 OPINION OF THE COURT
Joseph J. Maltese, J.
On July 8, 2006, the plaintiff John L. Baggs was a 12-year-old pitcher for the South Shore Little League tournament team. While participating in the 12-year-old majors division tournament against the Staten Island Little League tournament team, Baggs was struck in the face by a line drive baseball that he pitched to a 13-year-old batter, who was using an aluminum bat known as “the CONNEXION,” which is manufactured by Easton. Baggs sustained a fracture to his left orbital rim and his frontal sinus as a result' of being struck by the baseball, which ultimately required surgery.
The plaintiffs complaint alleges that the defendant, Little League Baseball, Inc., was negligent in increasing the age eligibility of little league players in the 12-year-old majors division by three months to allow a 13 year old to play, and allowed the use of aluminum bats, while not increasing the distance between home plate and the pitcher’s mound.
The defendant, Little League Baseball, Inc., moves this court for an order dismissing the plaintiffs complaint pursuant to CPLR 3211 (a) and/or granting summary judgment pursuant to CPLR 3212 based upon lack of personal jurisdiction. The plaintiff opposes this motion.
Patrick Wilson, the vice-president of operations of the defendant, Little League Baseball, Inc., states that the defendant was incorporated by an act of Congress* in 1964 which does not set forth any particular state of citizenship. Mr. Wilson’s affidavit also states that Little League Baseball, Inc.’s principal office is located in Williamsport, Pennsylvania. Furthermore, he states that Little League Baseball, Inc. has no employees or offices in New York, nor does it maintain any bank accounts or phone listings in the State of New York.
The defendant argues that New York’s “long-arm” jurisdiction as defined in sections 301 and 302 of the Civil Practice Law and Rules does not apply in this action and that the court lacks personal jurisdiction over Little League Baseball, Inc. The defendant further maintains that the plaintiffs allegations are not sufficient to establish jurisdiction over Little League Baseball, Inc. due to the plaintiffs failure to demonstrate that either section 301 or section 302 of the Civil Practice Law and Rules extends to Little League Baseball, Inc.
*214 The plaintiff contends that New York’s “long-arm” jurisdiction does apply to this action. The plaintiff asserts that the court maintains personal jurisdiction over Little League Baseball, Inc. and points to the defendant’s long and continuous course of doing business within the state as a basis for the court’s jurisdiction. Moreover, the plaintiff maintains that defendant’s relationship with local little leagues demonstrates that section 301 or section 302 of the Civil Practice Law and Rules extends to Little League Baseball, Inc. and that this relationship provides sufficient grounds for New York’s “long-arm” jurisdiction to apply to this action.
Pursuant to CPLR 301 the authority of the New York courts to exercise jurisdiction over a foreign corporation is based upon the fact that the defendant engaged in a “continuous and systematic” course of “doing business” as to warrant a finding of its “presence” in this jurisdiction (Landoil Resources Corp. v Alexander & Alexander Servs., 77 NY2d 28, 33 [1990]; Bryant v Finnish Natl. Airline, 15 NY2d 426 [1965]; Tauza v Susquehanna Coal Co., 220 NY 259 [1917]).
Pursuant to CPLR 302 (a) (3), the courts in New York may exercise personal jurisdiction over any nondomiciliary who:
“(3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he “(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or “(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.”
Although there is no bright-line rule regarding the nature and extent of business that must be done in order to mandate a finding of personal jurisdiction, New York courts have applied the “simple and pragmatic” test to determine whether a foreign corporation is “doing business” in the State of New York (Land-oil Resources Corp. v Alexander & Alexander Servs., 77 NY2d 28, 33 [1990]). The test, though not “precise,” is the aggregate of the corporation’s activities in the state such that it may be said to be “present” in the state “not occasionally or casually, but with a fair measure of permanence and continuity” (Tauza *215 v Susquehanna Coal Co., 220 NY 259, 267 [1917]). It is the quality and nature of the corporation’s contacts within the state which are sufficient to make it reasonable and just according to “ ‘traditional notions of fair play and substantial justice’ ” that it be required to defend the action here (International Shoe Co. v Washington, 326 US 310, 316 [1945]).
In addition to the “simple and pragmatic” test applied to a corporation’s activities within the state, New York courts have maintained personal jurisdiction over nondomiciliaries who derive substantial revenue from interstate and international commerce when it can be shown that New York is a state where such commerce occurred (Landoil Resources Corp. v Alexander & Alexander Servs., 77 NY2d 28 [1990]). Moreover, in modern methods of business transactions, commerce is conducted by way of the Internet and where a corporation maintains a “highly interactive” Web site in an effort to facilitate such commerce, personal jurisdiction has readily been found to exist (Uebler v Boss Media, AB, 363 F Supp 2d 499 [ED NY 2005]). In Uebler v Boss Media (supra at 505), the United States District Court for the Eastern District of New York held that personal jurisdiction will be found when a “highly interactive” Web site enables Internet users to order products.
The Official 2006 Little League Baseball Incorporated Rule Book, issued by the defendant herein, outlines that within Little League Baseball, Inc. there are three structural components, each dependant upon the other and each vital to the success of the entire program. The first component is the administrative and service core of Little League Baseball, Inc. with its international headquarters located in Williamsport, Pennsylvania. The second component is described as the district, that is comprised of approximately 10 to 20 local little leagues located within a determined geographical area and is managed by a district administrator and his/her staff of assistant district administrators. The final component, which the Rule Book notes as the most important component, is the local little league. According to the Rule Book, it is through a strong administrative policy formulated and delegated from the top level, Little League Baseball Inc., that the local little leagues provide their services and resources.
The Rule Book also states that the administration of the local little leagues is governed by a hierarchy with Little League Baseball, Inc. at the top of this hierarchy. Furthermore, local little leagues operate under a charter granted annually by Little *216 League Baseball, Inc., and while adhering to this charter, local little leagues follow strict guidelines and regulations such as requiring their participants to sign and complete applications to play as well as to sign and complete accident notification forms. It is clear that the defendant is responsible for the creation of these forms where the defendant is listed as the proprietor and manager of the local little leagues and the rules by which they operate.
As well as the official authority that Little League Baseball, Inc. maintains over the local little leagues, it is apparent that the defendant generates substantial revenue from its “highly interactive” Web site, www.littleleague.org. On this site, Internet users may visit and shop for merchandise and purchase products that are officially licensed by Little League Baseball, Inc.
In applying the “simple and pragmatic” test and weighing the factors enunciated through the case law, it is readily apparent that the defendant Little League Baseball, Inc. has engaged in a “continuous and systematic” course of “doing business” on a regular basis within the State of New York. (Landoil Resources Corp. v Alexander & Alexander Servs., 77 NY2d 28 [1990].) It is further apparent that in mandating the guidelines and rules by which local little leagues will operate their affairs that the defendant has established significant contacts with local little leagues and participating players and parents who reside in the County of Richmond, City and State of New York.
Furthermore, the defendant owns and operates their own “highly interactive” Web site, www.littleleague.org, where Internet users can visit and shop for officially licensed Little League Baseball, Inc. merchandise, which demonstrates that the defendant has engaged in commerce sufficient to permit New York’s “long arm” jurisdiction to apply to this action. (Uebler v Boss Media, AB, 363 F Supp 2d 499 [ED NY 2005].)
The use of aluminum bats in little league baseball has become one of local and national attention and concern. While New Jersey and Massachusetts have considered banning the use of aluminum bats in little league baseball, Montana recently passed a resolution advocating the use of wooden bats after an 18 year old was struck in the head by a batted ball and later died from his injuries. (Silverman, For Safety, Turning Away From Bats That Go Plink, New York Times, May 13, 2007, at 6, col 5.) In North Dakota, a ban on aluminum bats in high school baseball began in the spring of 2007. (Id.)
*217 In April of 2007 the New York City Council overrode a mayoral veto that banned the use of aluminum bats in New York City high school games. Councilman James S. Oddo, from Staten Island, the bill’s sponsor, argued that baseballs travel at a higher speed when hit with aluminum bats and pose a greater risk of injury to baseball players. New York City Mayor Michael Bloomberg and others who opposed the bill maintained that there is a lack of scientific evidence supporting a ban on the use of aluminum bats. (Id.)
This court will later evaluate the scientific evidence to be presented on whether baseballs travel at a higher speed when hit with an aluminum bat by 12- and 13-year-old baseball players. The court will also examine whether a smaller little league baseball field with shorter distances between the batter and the pitcher than a standard professional baseball field, where only wooden bats are used, creates an unreasonable increased risk of harm to little league baseball players who use aluminum bats.
The plaintiff has established that the defendant has engaged in a long and continuous course of doing business in this state to render personal jurisdiction over the defendant. Moreover, after a review of the facts and issues, it is clear that there are sufficient issues that will, at this time, require a trial.
Accordingly, it is hereby ordered that the defendant’s motion for summary judgment seeking a dismissal of the plaintiffs complaint for lack of personal jurisdiction is denied.

 See, Pub L No. 88-378 §§ 1-18, 78 US Stat 325 (1964).